IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Estate of Thomas Woeste, et al.,    )
                                    )
                Plaintiffs,         )
                                    )   Case No. C-1-02-56
        vs.                         )
                                    )
The AIG Companies,                  )
                                    )
                Defendant.          )

<u>Memorandum and Order</u>

    The resolution of this action arising under the
Employee Retirement Income security Act ("ERISA"), 29 U.S.C. §
1132(a)(1)(B), is significantly simplified by the parties'
agreement with respect to the procedural history, present
procedural posture, applicable standard of review, and factual
history.  Indeed, while they seem unaware of their substantial
agreement, the parties appear to differ only with respect to the
interpretation and application of certain language in the ERISA
plan in question, the Group Accident Insurance Policy No. PAI
8040360, covering employees of Gannett Company.  The Court refers
to that policy as the "Plan."

    The parties agree that Thomas Woeste, whose estate and
widow are the Plaintiffs in this action, was covered under the
Plan at the time of his death in August 1999.  They further agree
that Thomas Woeste died in August 1999 as a result of a Vibrio
vulnificus infection from eating raw shellfish and that Mr.
Woeste was far more susceptible to death from such an infection

than most other people because he had Hepatitis C and cirrhosis of the liver.

The parties agree that the Plan provides a $200,000 benefit for injuries, including death, resulting from accidents. The Plan defines "injury" as "bodily injury caused by an accident . . . and resulting directly and independently of all other causes. . . ."  It excludes "any loss caused in whole or in part by, or resulting in whole or in part from . . . sickness, disease or infections of any kind; except bacterial infections due to an accident, cut or wound, botulism or ptomaine poisoning."

Defendant, the administrator of the Plan, denied Plaintiffs' claim for benefits under the Plan both initially and on appeal.  The basis for the denial was that Thomas Woeste's liver diseases contributed to his death and that, for that reason, his death does not constitute an injury under the Plan definition and is excluded from coverage by virtue of the above quoted exclusionary language, inasmuch as a disease caused, in part, the death.

Plaintiffs bring this action in the nature of a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  The parties agree that any state law claims Plaintiffs may have attempted to assert in this action are preempted by ERISA.  Plaintiffs assent to the dismissal of those claims and the treatment of their claims as a claim for benefits under ERISA only.

The parties agree that this Court's consideration of Plaintiffs' claim for benefits is governed by the standards

2

enunciated and clarified in <u>Wilkins v. Baptist Healthcare System, Inc.</u>, 150 F.3d 609 (6th Cir. 1998).  In <u>Wilkins</u>, the Court of Appeals held that neither the summary judgment procedures set forth in Rule 56 of the Federal Rules of Civil Procedure nor the bench trial procedures set forth in Rule 52 are applicable to a claim for benefits under ERISA as to which the Court's task is to review the decision of a plan administrator.  <u>See</u> <u>id</u>. at 617-18. Instead, the Court of Appeals held that, when reviewing the decision of an ERISA plan administrator, the Court must first ascertain whether the plan affords the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  If so, the Court reviews the administrator's decision in accordance with an arbitrary and capricious standard, which is highly deferential.  <u>See</u> <u>Borda v. Hardy, Lewis, Pollard & Paige, P.C.</u>, 138 F.3d 1062, 1066 (6th Cir. 1998).  If the plan does not afford such discretionary authority to the plan administrator, the Court reviews the administrator's decision in accordance with a <u>de novo</u> standard. <u>See</u> <u>Wilkins</u>, 150 F.3d at 613.

        In this case, the parties agree that the appropriate standard of review is the <u>de novo</u> standard.  Accordingly, the Court must render independent findings of fact and conclusions of law based solely upon the materials contained in the administrative record.  <u>See</u> <u>Wilkins</u>, 150 F.3d at 619.  The Court may consider materials outside the record only in support of a procedural challenge to the administrator's decision, such as a

challenge based upon an alleged lack of due process or bias on the part of the administrator.  No such challenge is made in this action.  Accordingly, the Court's review is limited to the materials in the administrative record.  To the extent that Plaintiff has relied upon or included materials outside that record, the Court has not considered those materials.

1.  <u>Findings of Fact</u>

The Court's findings of fact are those upon which the parties agree.  No additional findings are required in order to resolve the parties' dispute.

Mr. Woeste was covered by the Plan at the time of his death.  He ingested raw shellfish, which were contaminated with Vibrio vulnificus.  He became infected with that bacterium. Approximately three days later, he went to a hospital emergency room and complained of symptoms apparently caused by that infection.  The sepsis resulting from the infection was discovered or suspected by medical personnel some 15 hours later, and a course of treatment by antibiotics commenced.  Mr. Woeste's condition never improved, however, and he died a few days after entering the hospital.

Mr. Woeste died of sepsis that overwhelmed his immune system and was introduced into his body by the ingestion of raw shellfish contaminated with Vibrio vulnificus.  Vibrio vulnificus is common in raw shellfish.  While it may make a healthy person sick, it rarely results in death to an otherwise healthy person.

4

A person with liver disease, such as Hepatitis C or cirrhosis, is more likely, to an extreme degree, to die from a Vibrio vulnificus infection.  Unrefuted evidence in the record suggests that the diseased person's chances of dying from such an infection are two hundred times greater than those of an otherwise healthy person.

Thomas Woeste suffered from at least two diseases of the liver: Hepatitis C and cirrhosis.  His death certificate lists sepsis from the ingestion of raw shellfish as the cause of his death and notes that Hepatitis C was a significant condition contributing to his death.  Neither party has introduced evidence pertaining to the likelihood that Mr. Woeste, specifically, would have died from the Vibrio vulnificus infection had he not suffered from Hepatitis C and cirrhosis of the liver.

Defendant denied Plaintiffs' claim for benefits under the Plan because a disease, namely Thomas Woeste's liver diseases, caused, in part, his injury, which was his death.  It based that decision upon the Plan's definition of "injury" and the exclusionary language of the Plan.

2.  Conclusions of Law

The Plan language in question is not ambiguous as Plaintiffs suggest.  Rather, the Plan plainly covers injuries that result directly from accidents and independently of all other causes.  It excludes losses that are caused, in whole or in part, by or result, in whole or in part, from sickness, disease,

5

or infections.  In short and as it pertains to this action, the Plan covers accidental injuries not caused, in whole or in part, by sickness, disease, or infections, with specific exceptions that are not applicable here.

Plaintiffs make much of the exemption of ptomaine poisoning from infections that are excluded from coverage.  They contend, without citing evidence in support, that the Vibrio vulnificus infection from which Thomas Woeste died was a form of ptomaine poisoning.

The basis for Defendant's denial of Plaintiffs' claim, however, was that Thomas Woeste's liver diseases caused, in part, his death.  Plaintiffs may argue that ptomaine poisoning was a cause of the death, but that fact is irrelevant under the Plan's exclusionary language if sickness, disease, or infection, other than the asserted ptomaine poisoning, also caused, in whole or in part, the death, as Defendant concluded.

Plaintiffs argue that no death would ever be covered under Defendant's reading of the exclusionary and definitional language in question.  The death of an otherwise healthy person from a Vibrio vulnificus infection resulting from the ingestion of raw shellfish is an example of a death that would be covered, however, highlighting the true dispute between the parties in this action.

The primary issue in the parties' dispute is not the correct reading of the Plan language in question.  The language itself is abundantly clear.  The issue is whether Defendant may

6

properly refuse to pay Plaintiffs any benefits under the Plan absent evidence establishing with one hundred percent certainty that Thomas Woeste would not have died in August 1999 had he not suffered from liver disease.

Plaintiffs argue that Defendant cannot prove that an otherwise healthy person never dies from Vibrio vulnificus infection and that, absent evidence of that fact, Defendant cannot establish that Thomas Woeste's liver diseases necessarily contributed to his death. Defendant observes, on the other hand, that the evidence of record establishes unequivocally that Thomas Woeste was imminently more susceptible to death from Vibrio vulnificus infection as a result of his liver diseases than an otherwise healthy person would have been.

A plan administrator need not prove the unprovable before denying a claim for benefits like Plaintiffs'. Thomas Woeste did, in fact, suffer from liver diseases that rendered him substantially more susceptible to death from Vibrio vulnificus infection than an otherwise healthy person. The evidence overwhelmingly establishes that his chances of dying from such an infection absent his liver diseases was infinitesimal. See Ganapolsky v. Boston Mutual Life Insurance Co., 138 F.3d 446, 448 (1st Cir. 1998)(no coverage where loss of foot was one hundred times more likely in diabetic than in otherwise healthy person suffering same injury). See also Ann Arbor Trust Co. v. Canada Life Assurance Co., 810 F.2d 591, 592-93 (6th Cir. 1987).

Plaintiffs cannot, and have not attempted to, prove that Thomas Woeste would have died from Vibrio vulnificus infection whether or not he suffered from liver diseases. To do so, they would be required to introduce evidence that the liver diseases were irrelevant to his death. All of the evidence in the record is starkly to the contrary. Plaintiffs simply cannot escape the conclusion that Thomas Woeste's liver diseases rendered him far more susceptible to death from Vibrio vulnificus infection. Those diseases contributed, at least in part, to his death, which would have been unlikely in the extreme had he not suffered from Hepatitis C and cirrhosis of the liver. Because those liver diseases contributed to Thomas Woeste's death, they are legitimately viewed as partial causes of the death in the sense that, while they did not cause the infection, they very likely were the reason for Mr. Woeste's death from the infection. The death is, therefore, not an injury under the Plan and is excluded from coverage.

3. <u>Conclusion</u>

For those reasons, Defendant's motion for judgment on the administrative record (Doc. 18) is hereby **GRANTED**. Plaintiffs' motion for declaratory judgment (Doc. 17), which the Court considers as a motion for judgment on the administrative record, is hereby **DENIED**. This action is **CLOSED**.

**IT IS SO ORDERED**.

_____/s/_____
Sandra S. Beckwith
United States District Judge